# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | NO. 3:21-cr-00040 |
| v. ) | JUDGE CAMPBELL |
| ) | |
| ) | |
| JASON STOKES ) | |

## JASON STOKES'S SENTENCING MEMORANDUM

Jason Stokes, through counsel, files the instant sentencing memorandum in support of a sentence of time served. Mr. Stokes submits that the advisory range is greater than necessary to satisfy the statutory objectives of sentencing under 18 U.S.C. § 3553(a). The U.S. Probation Office has calculated a Guidelines range of 30-37 months, based on a total offense level of 17 and a criminal history category of III. To date, Mr. Stokes has been in custody for approximately 27 months. Moreover, the U.S. Probation Office has identified Mr. Stokes's mental and emotional condition under USSG § 5H1.3 as potential grounds for departure from the advisory guideline range. (PSR at ¶ 95) A sentence to time served will allow Mr. Stokes to benefit from necessary mental health and substance abuse treatment, which his mother has stated is "vital" for Mr. Stokes's success. For this offense, the amount of time Mr. Stokes has already served in jail fully meets the purposes of sentencing. Thus, under all the facts and circumstances of this case, a sentence to time served is "sufficient, but not greater than necessary" to comply with the purposes of sentencing.

## I. IMPORTANT SENTENCING FACTORS

### A. The Nature of the Offense

Mr. Stokes recognizes that he has committed a serious offense in this case. However, although his actions alone were dangerous, Mr. Stokes had no intent of going through with any dangerous *plan*. On July 6, 2020, in response to prior messages about a plan, Mr. Stokes inquired who would take care of his mother when he was gone, then asked if the Online Covert Employee OCE2 could do so. On July 21, 2020, Mr. Stokes advised OCE3 that he wanted to delay the plan because he did not want to leave his elderly mother alone. (PSR at ¶ 24). Three days later, Mr. Stokes advised OCE3 that he did not want to meet up that weekend. Clearly, Mr. Stokes had doubts because he didn't want to leave his mom behind.

Additionally, Mr. Stokes was off his schizophrenia medication during the time these messages were being sent back and forth. On June 5, 2020, Mr. Stokes's mother was interviewed by an FBI agent and a licensed mental health professional and "advised that he was not doing well, that he was not sleeping well at night and sleeping all day. "(PSR at ¶ 13) Further, Mr. Stokes was interviewed the same day and relayed that he was not doing we as he missed his injection of Haldol that week. (PSR at ¶ 14)

As stated in the Presentence Report, Mr. Stokes acknowledges that his actions in this case do not comport with the teachings of Islam. (PSR at ¶ 55). He understands that his behavior did not further Islam's focus on peace and that it was, in fact, contrary to how Muslims would act. (*Id.*) Nonetheless, he recognizes the severity of his actions and, as a result, will never engage in similar dangerous behaviors ever again.

B. History and Characteristics

Mr. Stokes has struggled with schizophrenia for most of his life. As indicated in the PSR, "he has an extensive history of mental health issues. (PSR at ¶ 60) Mr. Stokes experienced symptoms of schizophrenia prior to becoming a teenager. At age 12, Mr. Stokes made his first attempt at suicide. (PSR at ¶ 60) He would go on to attempt to end his life on at least three other occasions. (Id.)

Mr. Stokes' schizophrenia manifests itself in the form of paranoia, delusions, and hallucinations. In 2001, Mr. Stokes was admitted to the Middle Tennessee mental Health Institute (MTMHI) reporting hallucinations. Centerstone also reports an admission for a Haldol overdose. (PSR at ¶ 62) Furthermore, Mr. Stokes experienced a schizophrenic episode in June 2022 wherein he suffered hallucinations and even outbursts towards his mother. (PSR at ¶ 62) One month later, Mr. Stokes remained unmedicated and committed two counts of Aggravated Robbery for which he was sentenced to 7.2 years. (PSR at ¶ 44) After serving 6.5 years, Mr. Stokes was released from prison and directly admitted to MTMHI for catatonic and paranoid behavior where he stayed for two weeks. Upon release Mr. Stokes was diagnosed with Schizophrenia and Mild Mental Retardation. (PSR at ¶ 63) Despite medication, Mr. Stokes continued to struggle with schizophrenia. In March of 2009, his paranoia was demonstrated when he "hid under a blanket with a knife thinking that people were "trying to get {him}" and that "people were following him." PSR at ¶ 64) Although he did not exhibit hallucinations during this episode, Mr. Stokes was described as "extremely paranoid and delusional." (PSR at ¶ 64) Similarly, Mr. Stokes became afraid to leave the home because he believed that police were out to get him and that they were everywhere waiting to arrest him. (PSR at ¶ 67)

In 2021 evaluated and determined incompetent to stand trial. He was subsequently ordered to restoration where he worked with a medical team for approximately eleven months. The restoration team also diagnosed Mr. Stokes with Schizophrenia, multiple episodes, currently in partial remission and intellectual disability. Mild provisional. (D.E. 40, page 12)

The guidelines generally recognize that "[m]ental and emotional conditions may be relevant in determining whether a departure is warranted," so long as the defendant's mental or emotional condition is "present to an unusual degree and distinguish[es] the case from the typical cases covered by the guidelines." U.S.S.G. § 5H1.3. Here, Mr. Stokes' mental illness was serious, was likely at the root of the instant criminal conduct and provides the basis for a departure under § 5H1.3. Likewise, probation identified U.S.S.G. § 5H1.3 as potential grounds for a departure. (PSR at ¶ 95)

Even if Mr. Stokes is held ineligible for a departure under § 5H1.3, this Court should nevertheless vary pursuant to 18 U.S.C. § 3553(a). First, Mr. Stokes' diminished capacity warrants a variance, if not a departure, "because his diminished capacity might affect 'the nature and circumstances of the offense and the history and characteristics of the defendant,' and those are among the statutory factors that guide sentencing." *See United States v. Anderson*, 547 F.3d 831, 832 (7th Cir. 2008).

Numerous courts have granted downward variances on the grounds of a defendant's mental illness, recognizing that a defendant with such diminished capacity is less culpable for his actions and perhaps a stronger candidate for successful rehabilitation with proper intervention and treatment. *United States v. Alemenas,* 553 F.3d 27 (1st Cir. 2009) (granting downward variance based on defendant's mental and emotional condition); *United States v. Mendez*, 248 Fed. Appx. 653, 661 (11th Cir. 2008) (unpublished) (granting modest reduction in sentence on basis of defendant's "mental problems"); *United States v. Miles*, 2010 WL 318280, at *4 (3d Cir.

Jan. 28, 2010) (upholding variance based, in part, on "fact that [the defendant] committed these offenses . . . because of mental health problems and a serious drug addiction)*; United States v. Ruiz*, 2009 WL 636543, at * 1 (S.D.N.Y. March 11, 2009) (granting significant reduction in part because of defendant's borderline personality disorder); *United States v. Patzer*, 548 F. Supp. 2d 612, 617 (N.D. Ill. 2008) (granting variance where defendant had a difficult childhood and, at time of offense, undiagnosed and untreated mental health condition (ADHD)); *see also California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring) (explaining that "defendants who commit criminal acts that are attributable to . . . emotional and mental problems . . . may be less culpable than defendants who have no such excuse").

### C. Respect for the Law

The need for the sentence to promote respect for the law is often cited based on a defendant's past criminal history and criminal behavior. Here, Mr. Stokes has a limited criminal history. He only has two felonies stemming from a single incident in 2002, which results in all his four criminal history points. (PSR at ¶ 44) At the time of the above incident, Mr. Stokes was only 23 years old and suffered from hallucinations and paranoia. A month prior to the Aggravated Robbery incident, Mr. Stokes was seen by Centerstone for episodes of hallucinations and outbursts. (PSR at ¶ 62) After serving 6.5 years in TDOC, Mr. Stokes was released in 2009, and has no convictions since.

Additionally, Mr. Stokes demonstrated respect for the law by accepting responsibility for his actions as soon as practical. He was arrested for the incident on August 20, 2020. (D.E. 7) After a few meetings with Mr. Stokes, counsel requested an evaluation on December 30, 2020, which was granted on January 8, 2021. (D.E. 20, 21) Mr. Stokes was originally declared incompetent and committed for restoration on May 24, 2021. (D.E. 33) He remained with the medical team for the

next year before they determined that he was restored to competency. On April 26, 2022, the Court received the restoration report and set a competency hearing for May 26, 2022. After meeting with counsel, Mr. Stokes appeared competent and entered a plea of guilty on July 22, 2022. (D.E. 50) Although he abandoned the plan before any violence ensued, Mr. Stokes recognizes that his actions breached the acceptable level of free speech.

### D. Deterrence

The Court is also directed to consider deterrence. Here, Mr. Stokes' actions were in large part due to being off his medication, which increased his paranoia while also making him susceptible to influence. Instead of a long period of incarceration, Mr. Stokes needs the benefit of medical services from community agencies such as Centerstone. When properly medicated, Mr. Stokes poses no threat to himself or society.

### E. Community Programs

Mr. Stokes needs mental health treatment, community programming, and structure instead of additional incarceration. He will benefit from community agencies like Centerstone, which provide services such as therapy and medication management. Previously, Mr. Stokes participated in crisis treatment as well as therapy and general day programming through Centerstone and plans to participate with them upon release. Upon release, Mr. Stokes can seek have his disability benefits reinstated, which has to be in person since he has been in custody for more than twelve months.

In hopes of release, Mr. Stokes has made arrangements through the U.S. Marshal's office to have his medication sent with him to court. Additionally, Mr. Stokes plans to reside at Cupid's Transitional Care, which is a non-profit program providing safe housing, secure mental health treatment, and assistance with obtaining insurance and benefits.

## II. CONCLUSION

For the reasons discussed above, Mr. Stokes respectfully requests that this Court vary from the advisory guideline range and grant him a sentence of time served. Time served in this case is "sufficient, but not greater than necessary" to comply with the sentencing factors under 18 U.S.C. § 3553(a).

Respectfully submitted,

s/ *Dumaka Shabazz*
DUMAKA SHABAZZ (BPR#022278)
Assistant Federal Public Defender
810 Broadway, Suite 200
Nashville, TN 37203
615-736-5047
E-mail: dumaka_shabazz@fd.org

Attorney for Jason Stokes

## CERTIFICATE OF SERVICE

I hereby certify that on the November 29, 2022, I electronically filed the foregoing *Jason Stokes's Sentencing Memorandum* with the U.S. District Court Clerk by using the CM/ECF system, which will send a Notice of Electronic Filing to the following: Joshua A. Kurtzman, Assistant United States Attorney, 719 Church Street, Suite 3300, Nashville, Tennessee 37203-3870.

s/ *Dumaka Shabazz*
DUMAKA SHABAZZ